No. 428 June 26, 2024 427

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JORDAN CLAY WILSON,
*Defendant-Appellant.*

Lane County Circuit Court
20CR38155; A176347

Charles M. Zennaché, Judge.

Submitted May 25, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patricia G. Rincon, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant was convicted of attempted murder in the second degree with a firearm (Count 2), and unlawful use of a weapon (UUW) with a firearm (Count 3). The trial court exercised its authority under ORS 137.123(5)(b) to impose partially consecutive sentences for Counts 2 and 3. In a single assignment of error, defendant argues that the trial court erred by imposing consecutive sentences. We conclude that the trial court was authorized to do so because the two offenses created a risk of causing loss, injury, or harm to different victims. *See* ORS 137.123(5)(b) (providing, in relevant part, that the trial court has discretion to impose consecutive sentences for separate convictions arising out of a continuous and uninterrupted course of conduct when the offense "caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses"). We therefore affirm.

FACTS

In July 2020, defendant's adult son called the police in Eugene after he encountered defendant outside defendant's ex-wife's house with a pistol or handgun. By the time police arrived, defendant had left. Eugene Police Officer Solorio spoke with defendant's son. Based on information provided by defendant's son, Solorio and several other police officers went to defendant's residence.

Defendant's house was in a residential neighborhood of Eugene, close to "a very busy roadway." When Solorio rang the doorbell, defendant slowly opened the door. Solorio saw a gun sticking out of the pocket of defendant's pants. Solorio said "gun," or "drop the gun," and he saw defendant lift or raise it. Solorio turned around and ran, and he immediately heard gunshots. Initially, Solorio heard two gunshots and "a lot more just after that."

Solorio was not injured. Another officer fired gunshots in return. The officers moved away from the house, and they were eventually removed from the scene by an armored vehicle. After speaking by telephone with a detective trained in crisis negotiation, defendant surrendered to police. Police found six shell casings matching defendant's gun inside his

doorway or outside the front doorway. Defendant had fired his gun in the direction of other houses. Several bullets were found lodged in the walls of defendant's house.

Defendant was charged with two counts of UUW with a firearm (Counts 1 and 3), and one count of attempted murder in the second degree with a firearm (Count 2). Count 1 was based on the incident outside defendant's ex-wife's house. Counts 2 and 3 were based on what occurred at defendant's residence. A jury acquitted defendant of Count 1 but found him guilty of Counts 2 and 3.

At sentencing, the state requested partially consecutive sentences under ORS 137.123(5). The state argued that Officer Solorio was not the only person endangered by defendant's conduct, which also created a risk of harm to another officer and to persons in vehicles or residences within range of defendant's weapon. The state requested that 30 months of defendant's 60-month mandatory minimum sentence on Count 3 should be consecutive to his sentence on Count 2.

Defendant argued against consecutive sentences, contending that he engaged in an uninterrupted course of conduct, that it all happened very quickly, and that it would be impossible to commit attempted murder of a police officer within city limits without also engaging in UUW. Defendant argued that all six bullets were found in the wall of his house, and that therefore there was no risk to other officers or to the public.

After hearing argument from the parties, the trial court ordered partially consecutive sentences. The trial court found that defendant's conduct created a risk of harm to Officer Solorio and to "members of the public, your neighbors, people driving up and down that street. I know there was evidence about how busy the street was. There was evidence about houses nearby *** [and] other officers being within the range of the weapon in this matter." The trial court sentenced defendant to the mandatory minimum term of 90 months in prison on Count 2 and the mandatory minimum term of 60 months in prison on Count 3. The court ordered 18 months of the sentence on Count 3 to be consecutive to

the sentence on Count 2. We turn to whether the trial court erred by imposing partially consecutive sentences.

## ANALYSIS

"We review a trial court's imposition of consecutive sentences for errors of law and determine whether the trial court's predicate factual findings are supported by any evidence in the record." *State v. Porter*, 313 Or App 565, 566, 494 P3d 988 (2021). Under ORS 137.123(5)(b), a sentencing court has discretion to impose consecutive sentences for separate convictions arising out of a continuous and uninterrupted course of conduct only if it finds that the criminal offense for which a consecutive sentence is contemplated "caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

On appeal, defendant argues that the consecutive sentences were error because the conduct underlying both offenses and the risk of harm created by both offenses was the same. The state responds that the trial court was authorized to impose consecutive sentences because the two crimes had different victims. Although Officer Solorio was the victim of the attempted murder offense, other police officers or persons within range of the discharged firearm were victims of the UUW offense. As we explain below, because defendant's discharge of his firearm within city limits implicates ORS 166.220(1)(b), the victim of that crime was not only Officer Solorio, but anyone within a group of people.

In two recent cases, we addressed consecutive sentencing in relation to the crime of UUW. In *State v. Davis*, 331 Or App 487, 545 P3d 1252 (2024), the trial court imposed, among other things, consecutive sentences for convictions of first-degree robbery with a firearm and UUW with a firearm. *Id.* at 489-91. We remanded for resentencing for a number of reasons, including because the two offenses did not cause or create a risk of causing harm to different victims. *Id.* at 491. Instead, "the counts in the indictment track[ed] the statutory language of the offenses and accuse[d the] defendant of

threatening use of force against *D* (robbery) and intending to unlawfully use a weapon against *D* (UUW), not any of her family members." *Id.* (Italics in original.) Because those two crimes had the same victim, ORS 137.123(5)(b) did not authorize consecutive sentences.

In *State v. Brass*, 310 Or App 602, 603, 485 P3d 289, *rev den*, 368 Or 514 (2021), we affirmed the trial court's decision to impose consecutive sentences for convictions of UUW and felon in possession of a firearm (FIP). We affirmed because the two offenses had different victims; the defendant's "UUW crime had a specific victim—

the person at whom he pointed a gun—" but the victim of his FIP offense was "the public at large." *Id.* at 604. Although the public at large included the person at whom the defendant pointed his gun, we explained that "the public is qualitatively distinct from an individual," such that the two are different victims. *Id.* at 607.

Guided by our reasoning in *Davis* and *Brass*, we conclude that the trial court had discretion to impose consecutive sentences because defendant's crimes had different victims. "[F]or consecutive-sentencing purposes under ORS 137.123(5)(b), the 'victim' at issue is determined by the substantive statute defining the relevant criminal offense ***." *State v. Gatewood*, 300 Or App 21, 30, 452 P3d 1046 (2019), *rev den*, 366 Or 257 (2020). Here, the relevant criminal offenses are attempted murder in the second degree with a firearm (Count 2) and UUW with a firearm (Count 3).

Starting with Count 2, intentional criminal homicide constitutes murder in the second degree, ORS 163.115(1)(a), and a person commits criminal homicide if, without justification or excuse, the person causes "the death of another human being." ORS 163.005(1)(a). Here, in Count 2 of the indictment, the state alleged that defendant unlawfully and intentionally attempted to cause the death of Officer Solorio. Thus, Officer Solorio was the victim of that crime. *See Davis*, 331 Or App at 491 (looking to both the statute and the indictment when determining the victim of the offense).

Turning to Count 3, the crime of UUW can be committed in two different ways. ORS 166.220 provides:

"(1)   A person commits the crime of unlawful use of a weapon if the person:

"(a)   Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon \*\*\*; or

"(b)   Intentionally discharges a firearm, \*\*\* within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge."

Here, the language of the indictment tracks the statutory language of ORS 166.220(1)(b), alleging in Count 3 that defendant unlawfully and intentionally discharged a firearm, within the city limits of Eugene, "at and in the direction of persons, buildings, structures, and vehicles within the range of the weapon[.]" It is obvious from the language of the indictment that defendant was charged under ORS 166.220(1)(b). Therefore, the victim in Count 3 was any person within the range of the firearm when defendant discharged it, or any person in a building, structure, or vehicle within that range.

By contrast, in *Davis*, 331 Or App at 490-91, the defendant was charged with "intending to unlawfully use a weapon against" the victim, and he was convicted "for carrying and possessing [a] firearm with the intent to use it unlawfully against" the victim, which tracks the statutory language of ORS 166.220(1)(a). Similarly, in *Brass*, 310 Or App at 603, "[t]he conduct underlying the UUW charge was pointing a gun at another person," so it is reasonable to infer that that defendant was charged under ORS 166.220(1)(a). In each of those cases, the victim of the crime of UUW was a specific individual. But, in the instant case, based on ORS 166.220(1)(b) and the language of the indictment, the victim of the crime in Count 3 was any person within range of the discharged firearm.

Although Officer Solorio—the victim of the crime of attempted murder—was a person within that range, we explained in *Brass*, 310 Or App at 607, that a group of people

is qualitatively distinct from an individual, such that they constitute different victims. Here, Officer Solorio was the victim of the offense of attempted murder in the second degree with a firearm in Count 2, but the victim of the crime in Count 3 was any person within a group of people. The two crimes created a risk of causing loss, injury, or harm to different victims under ORS 137.123(5)(b). The trial court did not err in imposing partially consecutive sentences for those two crimes.

Affirmed.